## Burke v. Greer.

(Decided January 12, 1923.)

## Appeal from Pike Circuit Court.

1. Elections—Contest—Pleading.—The trial court did not err in overruling a motion to strike from a petition in an election contest proceeding under section 1596a-12, Ky. Stats., allegations that in every ·precinct in the district specified numbers ranging from 22 to 60 of the voters were bribed to cast their votes for contestee, but without naming such voters, upon condition that the contestant supply the names by an amended petition, although the time had then expired for filing new grounds of contest.

2. Elections—Contest—Pleadings.—Under section 1596a-12, *supra*, a defeated candidate may contest the election and have it declared void for such fraud, intimidation, bribery or violence in the conduct of the election as renders it impossible to determine which candidate has been fairly elected, and for such purpose it is not necessary to state in the petition the names of all or any of the illegal voters voting for the contestee.

3. Elections—Contest.—An election was properly declared void where it was shown that about $1,000.00 or more was expended upon each side in the purchase of votes at from $2.00 to· $5.00 each, although the contestee contributed no part of the fund and had no part in its distribution and did not consent thereto, and although the fund was expended in purchasing votes for his ticket and primarily for others on the ticket.

4. Elections—Contest—Costs.—Each party to such a proceeding should be required to pay his own costs when the election is declared void and where contestant sought primarily to have himself declared elected and where each party was the beneficiary of the illegal practices which rendered the election void.

WILLIS STATON for appellant.

J. J. MOORE, ROSCOE VANOVER and J. M. BOLLING for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming in part and reversing in part.

At the regular November election in 1921, the appellant Burke and the appellee Greer were, respectively, the Democratic and Republican candidates for magistrate in the second magisterial ·district of Pike county. Upon the face of the returns, Burke received 1,044 votes and Greer 1,015, and accordingly a certificate of election was issued to the former. Thereafter and within the time allowed by law, Greer filed this action contesting the election of Burke, alleging in his petition as grounds· there-

for: Irregularities in the count; that in each of the seven voting precincts in the district specified numbers of illegal votes had been cast and counted for Burke, the aggregates of which are 84 who were not qualified voters, 130 who without right voted openly upon the table, and 290 who were bribed to vote for Burke, but without naming any of such voters; and that he (Greer) received a majority of the legal votes cast in the election. He sought a recount of the ballots, the elimination of illegal votes cast for Burke, and that he be declared elected and entitled to the office, but that if this could not be done because of the extent of the fraud and bribery practiced at the election, that it be declared void.

Before answering, Burke filed a demurrer to the petition and a motion to strike therefrom all allegations with reference to any illegal votes having been cast at the election. He then filed answer traversing the allegations of the petition, and a counter contest alleging as grounds therefor that there had been cast and counted for contestant many more votes that were illegal because of disqualification, bribery and open voting by the voters than alleged to have been cast for him, and he not only gave the number of each of such alleged illegal voters at each precinct, but gave their names as well.

The regular judge of the district, having been a candidate at the same election, declined to hear the case, and a special judge was designated to try it. He did not appear for the purpose until in May, 1922, and until then no judge had been available to pass upon contestee's demurrer and motion to strike. In the meantime the proof for both sides had been taken as required by law, and within the time allowed therefor. The court overruled the demurrer to the petition, and, upon the condition that contestant file an amended petition giving the names of the illegal voters alleged to have voted for contestee, overruled the motion to strike from the petition. The amended petition, filed in compliance with this order of the court, named nine voters not qualified, twenty-nine that were bribed, and thirty that had been improperly permitted to vote upon the table, for contestee.

The allegations of the amended petition were traversed and the case submitted upon motion of the contestee for a final judgment. The ballot boxes were opened and the ballots recounted, which resulted in increasing contestee's majority from 29 to 36 votes, but upon consideration of all of the evidence, the court held that be-

cause of wholesale bribery indulged in by the workers for both parties, it was impossible to determine which had received a majority of the legal votes cast, and that neither was entitled to the office. It was therefore adjudged that the election was void and of no effect, as is provided shall be done under such circumstances by section 1596a-12 of the statutes, and the contestant was given a judgment for his costs.

Seeking a reversal of the judgment, the contestee, upon this appeal, contends that the court erred in overruling his demurrer, his motion to strike, in permitting contestant to file the amended petition, in declaring the election void, and in refusing to dismiss the petition.

1. As it is conceded in brief by counsel for contestee that the petition stated a cause of action for a recount of the ballots, it is obvious the court did not err in overruling the demurrer thereto.

2. As the petition did not give the names of any of the voters alleged to have voted illegally for the contestee, it is insisted that the court erred in refusing to strike from the petition all references thereto, and that to permit the contestant to make those allegations good by supplying in an amended petition the names of the alleged illegal voters, permitted him, in effect, to file additional grounds for contest after the time allowed by section 1596a-12, *supra,* for such purpose had long since expired, and at a time when contestee's right to meet said charges by proof had also expired.

While by the express provisions of the statute, *supra,* prescribing the practice in such cases as this no new ground of contest may be set up after the expiration of the time allowed therefor, we have uniformly held that after the expiration of such time a ground of contest defectively stated within the time may be perfected by amendment. Wilson v. Hines, 99 Ky. 221, 35 S. W. 627; Phillips v. Ratliff, 134 Ky. 704, 121 S. W. 460; Butler v. Roberson, 158 Ky. 101, 164 S. W. 340. In such cases, however, the question has been usually, if not always, raised by a motion to make the petition more definite and certain rather than by a motion to strike, and it is insisted for the contestee that when, as here, no court was available to pass upon preliminary motions until after the expiration of the entire time allowed for preparation of the case for trial, it is a manifest injustice to permit an amendment to be filed to make good a ground of contest attempted but not stated, since he can-

not then, and ought not sooner be required to take proof upon the matter; and that he should be permitted to have such attempted ground of contest stricken from the petition rather than made good by amendment at such late date.

Recognizing that this contention is not wholly without force, it is nevertheless true that to sustain it would in effect overrule the cases which have held uniformly that the contestant, by amendment to his petition after the time allowed for filing new ground of contest, may perfect one seasonably alleged but imperfectly stated, and this we are unwilling to do, especially since under those cases the court may grant additional time for taking proof, which was not requested here.

There is, however, in this case another and controlling reason why the motion to strike should have been overruled in so far as it applied to the allegations of bribery, although the names of the bribed voters were not given as would have been necessary if the one purpose of the petition had been to have the contestant declared entitled to the office. As we have seen, while such was the primary purpose of the contest, a secondary purpose was to have the election declared void because of wholesale and rampant bribery, if the proof showed that same existed and because thereof it was impossible to determine which candidate had received a majority of the legal votes. For this purpose it is not necessary, it seems, to allege or prove the names of all or any of the bribed voters, since this court has uniformly recognized the difficulty and frequently the impossibility of so doing. Scholl v. Bell, 125 Ky. 750, 102 S. W. 248; Ford v. Hopkins, 141 Ky. 181, 132 S. W. 544.

The petition alleges that in every voting precinct of the district voters were bribed to vote for contestee, ranging from 22 in one precinct to 60 in another, and that of the 1,044 votes received by the contestee, 290 were bribed to cast their votes for him.

Such wholesale bribery, if measurably sustained by the evidence, is unquestionably sufficient to avoid the election regardless of whether or not it would entitle the contestant to a judgment declaring him entitled to the office, which it would not of course where, as here, the proof also shows beyond a doubt that bribery was practiced by his adherents and he received the benefit thereof in exactly the same way and possibly to even a larger extent.

In this view it is not necessary to consider the amended petition which only perfected a cause of action which if established by the evidence would have entitled the contestant to be declared elected, since his counsel frankly confess that the evidence of bribery upon the part of his workers was such as deprived him of such right.

We are therefore of the opinion that the petition stated not only a cause of action for a recount of the ballots as cast, but a cause of action as well to have the election declared void and of no effect because of wholesale bribery which rendered it impossible to determine with anything like accuracy the number of legal votes cast for the contestee.

It is shown by the proof with reasonable certainty that in five of the seven election precincts in the district, the Democrats expended approximately $1,000.00 in the purchase of votes at from $2.00 to $5.00 a head, and that although the contestee contributed no part of the fund and had no part in its distribution, that most of it was spent to buy votes for the straight ticket, and that many of such votes were cast for him.

The proof further shows that equally as much or more money was raised and spent in the same way in behalf of the Republican candidates, and that many of the voters who cast their votes for the contestant were paid therefor. How many of the voters who cast their votes for either candidate were induced to do so by money they were paid for voting the Democratic or Republican ticket, it is absolutely impossible to tell, and it seems to us that if ever there was a case justifying the court in declaring the election void and thus disfranchising the entire district, it is presented by this record. The votes of both men and women were not only bought and sold like chattels with but scant or any effort at concealment, but the paying if not the buying was done by women as well as men, and while there were of course many voters in the district who took no part in either the buying or the selling and who, of necessity, were shocked and outraged thereby, it is nevertheless the truth that the election in no wise registers the free, and possibly not the true, judgment and choice of the voters, and was therefore an election in form only.

And this is not the first time that such conditions have prevailed in this district, since it was shown by the rec-

ord that in Butler v. Roberson, *supra,* where the election was declared void, what occurred in this election not only was but a repetition of what occurred in that, but also that many of the same persons who bought or sold votes in that election did precisely the same thing in this.

It is a shame and a disgrace to the district where it occurs that any election should be so conducted. And it is a shame and a disgrace to the state as well when in any district such practices are habitually permitted or tolerated by the good citizens of the district, as well as by the state and county officials whose duty it is to arrest and prosecute such offenders. In either event, the courts at least should not stamp their approval upon such conditions by recognizing such an election as having any force or effect whatever.

It would be extremely unfair not to state that there is no proof that either the contestant or the contestee bought or attempted to buy any votes, or contributed to the funds expended for the purpose; and it is proven without contradiction that the contestee expressly refused so to do or approve of its being done, and that the funds expended were primarily expended in behalf of the other candidates upon the ticket for county and district officers, and that but little, if any, of the money was or would have been expended alone for either of these two candidates for the minor office of magistrate.

But these facts do not make it any easier or possible for us to determine to what extent bribery affected the result in their election, and there is, it seems to us, no other course open but to declare the election void and to express our determination, neither now nor any time in the future, to permit to stand an election in any precinct or district where bribery has been indulged in, whether by the candidates themselves or by others in their behalf and even without their consent, to anything like the extent as in this case.

In so far, therefore, as the judgment held the election void it is affirmed, but it was manifestly unjust to impose upon the contestee all of the costs of the action where, as here, he was no more to blame for nor the beneficiary of the illegal practices which rendered the election void than was contestant, and where the latter's primary effort and purpose was to have himself declared elected.

In such circumstances the parties should have been required to pay their own costs in the court below; and upon return of the case the judgment will be so modified and this having been done, the costs of the appeal will be divided equally between them, and it is so ordered.