## Grubbs v. Duffy.

(And Four Other Cases).

(Decided October 4, 1929.)

MILLARD D. GRUBBS for appellants.

JOHN C. DUFFY, JAMES BREATHITT, Jr., and WHITE & CLARK for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

These five election contests were heard together in the court below and in this court and will be disposed of by this opinion.

The case of Grubbs v. Duffy is a contest for the Democratic nomination for the office of county attorney of Christian county; the two cases of Mullins v. Gore and Capps v. Gore involve the Democratic nomination for the office of jailer of Christian county; the case of Croft v. Campbell is a contest for the Republican nomination for the office of representative from Christian county to the General Assembly; and the case of Myers v. Brown involves the Republican nomination for the office of sheriff. In each case, the respective appellees received the certificates of nomination to the office in question and the appellants are the contestants for such nominations. All of these contests were dismissed by the lower court on the ground that they had not been filed in time, and from the judgments of dismissal these appeals are prosecuted.

Section 1550-28 of the Statutes, relative to contests of primary elections, in part provides: "Any candidate wishing to contest the nomination of any other candidate who was voted for at any primary election held under this act shall give notice in writing to the person whose nomination he intends to contest, stating the grounds of such contest, within five days from the time the election commissioners shall have awarded the certificate of nomination to such candidate whose nomination is contested."

The three Democratic contests were filed on August 12th; the two Republican contests, on August 13th. The primary election was held this year on Saturday, August 3d. On Tuesday, August 6th, the county election commission of Christian county met, as required by statute, for the purpose of canvassing and tabulating the returns and awarding the certificates of nomination. So much is admitted. The county election commission of Christian county has for a number of years kept its records in a

large bound book provided for it by the county clerk; this book being left as a rule, as the statute requires it always to be, in the county clerk's office. Kentucky Statutes, sec. 1596a2. A part of this book is devoted to the minutes of the various meetings of the election commission. The rest of it is set aside for the tabulation of votes after elections, both regular and primary. The pages of this part of the book are ruled off in columns, convenient for the tabulation of votes in the various precincts of the county and in the races which may be involved. The evidence very clearly shows by the testi-mony of two of the election commissioners, the Democratic and Republican members, the sheriff not testifying, that the vote in all the races of the August primary in Christian county, excepting that for the Democratic nomination for county judge, was fully tabulated in the official record book of the election commission and the figures totaled on August 6th, while the election commission was in session in the county clerk's office. The following minute signed by all of the election commissioners was on that date written in this book at the bottom of the tabulation:

"Tuesday, August 6, 1929.

"Pursuant to law the board of election commissioners in and for Christian county, Kentucky, met in the office of the county court clerk and proceeded to tabulate the vote cast in the primary election held August 3, 1929. On motion adjourned to meet August 7, 1929, and continue the tabulation in the county judge's race.

"S. L. Cowherd, Chairman.
"L. J. Harris, Secretary.
"W. E. Keith, Member."

This minute is taken from page 5 of the transcript of evidence herein, concerning which there is no controversy in these cases, and not from the "tabulation exhibit," which is filed as a part of these records and which contestants question. The facts being as thus stated, the five days provided by the statute supra for the filing of these contests began with August 6th. It is true that the certificates of nomination were not issued that day and not until some time later, but in the case of Ward v. Howard, 177 Ky. 38, 197 S. W. 506, 509, we said: "We think that when the election commissioners have canvassed and tabulated the vote and it is ascertained by

this canvass and tabulation which candidate has received the majority of the votes, the opposing candidate may at once, and must within five days thereafter begin his contest proceedings, although no certificate of nomination has been issued. When the election commissioners have canvassed and tabulated the vote and ascertained who has received a majority of the votes, their duties, except to issue a certificate of nomination, are at an end, and they must award the certificate of nomination to the candidate who, as shown by the canvass and tabulation of votes, has received a majority of them, when this candidate files his statement of expenses as provided in the corrupt practice act. . . . But we repeat that the primary election law does not specifically provide that contest proceedings shall not be started until after a certificate has been issued. The intent of this statute is that the contest shall be commenced within five days from the time the commissioners should have awarded the certificate; that is to say, within five days from the time when the returns were canvassed and tabulated and the result ascertained.''

But it is argued that the rule thus laid down in the Ward v. Howard case, supra, was modified in the case of Colvin v. Mills, 214 Ky. 812, 284 S. W. 115, 116. The Colvin case involved a general election, but in speaking of primary elections and contests thereof it is said in the opinion in that case that a contest for nomination under section 1550-28 of the Kentucky Statutes must ''be begun within five days after the board makes and files the tabulation provided for in subsection 26 of that section.'' This subsection 26 of section 1550 of the Statutes (Ky. Stats., sec. 1550-26) provides, in part: ''The tabulation of votes for all offices for which the nomination papers are required to be filed in the county court clerk's office shall be on another separate sheet of paper for each political party and shall be filed in the county court clerk's office immediately after the canvass of the returns and tabulation of the votes by said election commissioners.''

Whether or not this dicta in Colvin v. Mills is a correct, or any extension of the rule laid down in Ward v. Howard, we need not here determine, for even if it be, the facts of these cases bring them within this so-called extension as contended for by the appellants herein. The evidence shows that the canvass of the votes was held, and the tabulation entered in the book and totaled while the election commission was in session in the county

clerk's office. The evidence shows that the tabulation was made in each race and for each political party as required by subsection 26 of section 1550 of the Statutes, supra. Therefore, when this tabulation was thus entered and totaled on the book, which the statute requires to be kept in the county clerk's office, it was filed within the meaning of subsection 26 of section 1550. It is true that later the secretary of the election commission took this book to his private office. Probably he had, under the statute, no right to do this, as the book is required by the statute to be kept as a public record in the county clerk's office. But whether he did or not, there had been a filing of the tabulation required by subsection 26 of section 1550 of the Statutes as we have seen, and the subsequent action of the secretary in taking the book out of the office cannot affect the filing theretofore had. The contests filed first herein were filed on August 12th. The statute, as we have seen, prescribes that a contest must be begun within five days from the time the election commissioners should have awarded the certificate of nomination to such candidate, and this we have in the Ward and Colvin cases held to mean from the time when the returns are canvassed, tabulated, the results ascertained, and possibly the tabulation filed in the county clerk's office. The day on which all these things are done must be counted as one of the five days provided for by the statute. Damron v. Johnson, 192 Ky. 350, 233 S. W. 745. Counting the 6th of August as the first day, we find that the five days expired on Saturday, August 10th. It follows that the five days had expired when these contests were filed on the 12th and 13th, and that the lower court did not err in dismissing them on the grounds it did. The judgment of the lower court in each of these cases is affirmed.

Whole court sitting.